**Opinion filed August 31, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00053-CV

_____

## IN THE INTEREST OF J.T., A CHILD

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV 10-01-009**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order terminating the parental rights of J.T.'s mother and father. The father (appellant) has filed a notice of appeal from the termination order. J.T.'s mother, who voluntarily relinquished her rights, has not filed an appeal. We affirm.

*Issues*

Appellant presents four issues for review. In the first and second issues, appellant asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of J.T. In his third and fourth issues, appellant challenges the legal and factual sufficiency of the evidence supporting the finding that he knowingly placed or knowingly allowed J.T. to remain in conditions or surroundings that endangered J.T.'s physical or emotional well-being.

*Legal and Factual Sufficiency*

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2010). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)-(T) and that termination is in the best interest of the child. Section 161.001. In this case, the trial court found that appellant committed two of the acts listed in Section 161.001(1). The trial court found that appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child and that appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. *See* Section 161.001(1)(D), (E). The trial court also found that termination was in the child's best interest. *See* Section 161.001(2).

Appellant does not challenge the finding under Section 161.001(1)(E) that he engaged in conduct or knowingly placed J.T. with persons who engaged in conduct that endangered J.T.'s physical or emotional well-being. The unchallenged finding is sufficient to support termination as long as termination was shown to be in J.T.'s best interest. *See* Section 161.001. Therefore, we must address appellant's first and second issues concerning J.T.'s best interest, but we need not reach the merits of appellant's third and fourth issues as they are not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

The question we must address is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the

2

desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

J.T. was born in 2006, and the Department of Family and Protective Services first became involved with her in 2008. In June 2008, appellant assaulted J.T.'s mother, and a protective order was subsequently entered prohibiting appellant from having any contact with J.T. or her mother for a period of two years. Appellant testified that, because of the protective order, he had not seen J.T. since July 2008 when she was removed at the age of two and one-half years old. J.T. was placed in her aunt's home. Then, in 2010, shortly after J.T. had returned to her mother's care, the Department again removed J.T. J.T. was returned to the aunt.

The record shows that appellant had a history of drug abuse. He had been convicted of a possession offense and spent eighteen months in prison in 2001-2002. Appellant testified that he and J.T.'s mother used drugs, specifically methamphetamine, for the first year they were together but that they quit using drugs about a year before J.T. was born. Appellant started using again in mid-2007. Appellant and J.T.'s mother were both using methamphetamine while J.T. lived with them.

Appellant testified at trial that he quit using drugs in July 2008 and that he has been to counseling, has taken parenting classes, and was in the process of completing the requirements of the family service plan. Appellant testified that he has changed drastically since J.T. was removed from his care and that he would like for J.T. to be placed with him. Appellant expressed deep regret and remorse over his actions that resulted in him being separated from J.T. Appellant's pastor and counselor, Steve Pulaski, testified on appellant's behalf, stating that, prior to the protective order being issued, appellant was an attentive parent. Pulaski observed appellant with J.T. at church, the store, the park, and other places around town and noticed that there appeared to be a bond or affinity between appellant and J.T.

3

The evidence shows that J.T. is happy and doing well in her aunt's household, that she thinks of her aunt and uncle as her parents, that their home is the only home J.T. knows, and that J.T. does not even remember her father. J.T.'s counselor did not believe it would be in J.T.'s best interest to return to appellant or even begin visits with him. Despite appellant's progress, both the Department and the CASA volunteer recommended termination of appellant's rights and adoption by the aunt and her husband, which the Department determined to be "a very appropriate placement." The Department employee assigned to this case believed termination and adoption to be in J.T.'s best interest. Based on the evidence presented at trial, the trial court could reasonably have formed a firm belief or conviction that termination of appellant's parental rights would be in J.T.'s best interest. We cannot hold that this finding is not supported by clear and convincing evidence. Thus, the evidence is both legally and factually sufficient to support the finding that termination of appellant's parental rights is in the best interest of J.T. Appellant's first and second issues are overruled.

We affirm the trial court's order terminating the parental rights of J.T.'s father.


JIM R. WRIGHT
CHIEF JUSTICE


August 31, 2011

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

4